PUIGDOLLERS, DEMANDANTE Y APELANTE, *v.* MONROIG, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 2ª., en causa sobre alimentos provisionales.

No. 1787.—Resuelto en abril 22, 1918.

ALIMENTOS PROVISIONALES—PENSIÓN ALIMENTICIA—RECURSOS DEL MARIDO—NECESIDADES DE LA MUJER.—Habiéndose solicitado por el demandado que se revocara la pensión alimenticia a que fué obligado, por haber llegado a hacerse innecesaria, previo el estudio de la prueba aportada, *se resolvió:* que la suma señalada de $50 para alimentos a la demandante, no guarda pro-

porción con los recursos del demandado y las necesidades de la que fué su esposa; y, por tanto, que lejos de reducirse o dejarse sin efecto la pensión debe aumentarse hasta cubrir la suma de $75, la cual no excede de la tercera parte de la renta de los bienes del demandado.

Id.—Persona Obligada a Cumplir con el Art. 177 del Código Civil.—No importa que el padre de una mujer divorciada disfrute o no de una posición económica desahogada, pues no es él sino el que fué su esposo el obligado a cumplir con el precepto del art. 177 del Código Civil.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. Juan de Guzmán Benítez.*

Abogados del apelado: *Sres. Eduardo Acuña y Ramón Falcón.*

El Juez Presidente Sr. Hernández, emitió la opinión del tribunal.

Con motivo de pleito de divorcio que fué fallado a favor de Georgina Puigdollers y Molina, por trato cruel por su esposo Antonio Monroig y Obrador, la Corte de Distrito de San Juan, Sección 2ª., dictó resolución en 10 de enero de 1906 por la que ordenó que el demandado Antonio Monroig entregara a la demandante Georgina Puigdollers en concepto de alimentos la cantidad de $50 a partir de la fecha de la interposición de la demanda.

Dos años después, en 31 de marzo de 1908, el demandado Monroig presentó ante la misma corte una moción con súplica de que se dejara sin efecto la pensión alimenticia concedida a Georgina Puigdollers, y a esa moción recayó resolución en 11 de abril de 1908, que dice así:

"En el presente caso la parte demandada ha comparecido por medio de su abogado y pedido a la corte que dicte una orden revocando y dejando sin efecto la pensión alimenticia concedida a la demandante, por sentencia de 10 de enero de 1906, debido a haber recibido dicha demandante la suma de $5,785.95 y por consiguiente mejorado de fortuna.

"La parte demandante se ha opuesto y alegado que ciertamente recibió la suma indicada en el pleito que siguiera contra el demandado sobre liquidación y entrega de bienes gananciales, pero que tal suma, deducidos honorarios de abogados, gastos judiciales, etc., ha quedado reducida a $1,665.88 y alegado además que actualmente se

encuentra en el 'Ursuline Seminary' de New Rochelle, N. Y., pagando una pensión de $45 mensuales, y gastando, además, $20 en ropa, etc.

"Es el espíritu de la ley que el cónyuge culpable, en los casos de divorcio, quede obligado a sostener al cónyuge inocente cuando éste necesite de ello y mientras se conserve digno.

"En el presente caso se fijó la pensión alimenticia en la suma de 50 dollars mensuales y las circunstancias, en concepto de la corte, en nada han variado.

"La suma percibida por la demandante como gananciales, ha quedado notablemente reducida y colocada a interés no es suficiente para el sostenimiento de la dicha demandante. Ésta, además, ha procedido de la manera más correcta, no ha contraído nuevo matrimonio y ha ido a vivir y a estudiar a un seminario mediante el pago de una pensión. Cincuenta pesos mensuales, más quince o veinte que puede obtener como rentas de ese capital, deben estimarse como una cantidad necesaria para que la demandante pueda sostenerse.

"Y teniendo en cuenta además que el demandado posee amplios medios de fortuna, la corte resuelve no haber lugar por ahora a revocar y dejar sin efecto la pensión alimenticia concedida a la demandante por sentencia de 10 de enero de 1906."

Volvió Antonio Monroig a presentar otra moción en 3 de marzo de 1917, con igual súplica de que se dejara sin efecto la resolución en que se le impuso la obligación de entregar $50 mensuales a la que fué su esposa Georgina Puigdollers, a cuyo fin alega que Antonio Puigdollers, padre de Georgina, había declarado poseer bienes propios por más de $28,000, los que mientras no se probara lo contrario correspondían a la sociedad conyugal del Puigdollers con Serafina Molina, fallecida últimamente, con cuyo motivo había que dividir entre los hijos la mitad del capital declarado por el padre, percibiendo así Georgina una suma que unida a la que recibió por liquidación de la sociedad de gananciales con Antonio Monroig, ascendente a más de $5,000, la habían colocado en situación tal que podría vivir de sus propias rentas.

Georgina Puigdollers se opuso a la nueva pretensión de revocación de la pensión alimenticia alegando que la corte ya anteriormente había tenido en cuenta la cantidad perci-

bida por aquella con motivo de la liquidación de la sociedad de gananciales al señalarle la cuota alimenticia de $50 mensuales, y que por lo que atañe a la herencia materna sólo le correspondió en ese concepto la suma de $234.83 según escritura número 6 de 8 de febrero de 1916, sobre partición de bienes hereditarios de Serafina Molina de Puigdollers.

Alegó además la opositora que no sólo tiene que atender a su subsistencia sino también a las necesidades de su salud quebrantada, precisamente como consecuencia del trato cruel de que fué objeto por parte de su esposo durante su unión conyugal, que el costo de la vida es mucho mayor que en la fecha en que se fijó la pensión alimenticia, y que Monroig gracias al próspero estado de los negocios de la riqueza azucarera y de la importante factoría de azúcar, ''Central Juanita'' de Bayamón, de que es condueño principal, ha aumentado extraordinariamente los medios de fortuna que ya tenía en 1908, por todo lo cual pedía que no sólo fuera declarada sin lugar la moción sino que fuera aumentada la pensión cuando menos hasta $75, desde el mes inmediato a la resolución.

La corte dictó sentencia en 3 de diciembre de 1917 declarando extinguida a partir desde esa fecha la obligación de Antonio Monroig de hacer efectiva la pensión alimenticia de $50 que venía pagando a Georgina Puigdollers, sin especial condenación de costas, contra cuya sentencia interpuso la parte agraviada recurso de apelación para ante esta Corte Suprema.

La ley aplicable al caso para la decisión del recurso es el artículo 177 del Código Civil que la parte apelante cita como infringido y que transcribimos a continuación:

''Art. 177.—Si la mujer que ha obtenido el divorcio no cuenta con suficientes medios para vivir, la corte de distrito puede asignarle alimentos discrecionales de los bienes que sean de la propiedad del marido, sin que pueda exceder la pensión alimenticia de la tercera parte de la renta de aquéllos.

''La pensión alimenticia será revocada si llegase a hacerse inne-

cesaria, o cuando la mujer divorciada contrajese segundo matrimonio.''

Como Georgina Puigdollers no ha contraído segundo matrimonio, a Monroig incumbe probar que la pensión alimenticia cuya revocación pide ha llegado a hacerse innecesaria.

Monroig presentó como prueba dos *affidavits,* uno de su abogado Ramón Falcón y otro de Angel Rosa. Falcón declara que Georgina Puigdollers se encontraba desde 1907 en New York, Estados Unidos, donde el costo de la vida es mayor que en Puerto Rico, que dicha señora no se hallaba entonces en ningún sanatorio ni se ha probado que sufra padecimiento físico debido a los malos tratamientos del que fué su esposo, y que es público que Antonio Puigdollers, su padre, lleva una vida buena y honesta e invierte la mayor parte de sus rentas en atender a sus hijos. La otra declaración jurada de Angel Rosa, expresa que durante su estancia en los Estados Unidos, New York, vió allí a Georgina Puigdollers viviendo con toda holgura en casa confortable de un precio mayor del que ella puede pagar con una pensión de $50 y concurriendo frecuentemente a sitios de distracción y recreo a los cuales no podría asistir una persona estrictamente sujeta a una pensión como la que ella disfruta.

Monroig no suministró prueba para justificar cuál sea el capital que Georgina Puigdollers heredó de su madre y qué renta perciba por ese capital.

Los *affidavits* del abogado Falcón y de Angel Rosa nada argullen de modo concluyente contra la necesidad de la pensión de que venía disfrutando Georgina Puigdollers y si algún mérito favorable arrojan en favor de la alegación fundamental de la moción ha quedado completamente desvirtuado por los *affidavits* que la opositora presentó como evidencia. Esos *affidavits* son dos, ambos de Antonio Puigdollers, padre de la Georgina. En uno de ellos declara Puigdollers que la pensión alimenticia de $50 que su hija recibe de Antonio Monroig, es insuficiente para sus gastos pues el pago de $10 se-

manales para habitación y comida en el *boarding* donde vive
consume casi totalmente aquella cantidad, no quedándole di-
nero sobrante para gastos de lavado, ropa y demás necesida-
des imperiosas de la vida y mucho menos para el pago de
médicos y medicinas; que ella tuvo que trasladarse a New
York por exigirlo así el estado de su salud, y porque viviendo
allí en unión de su hermana Josefina le era más fácil cubrir en-
tre las dos los gastos comunes; que fallecida Serafina Mo-
lina sólo correspondió a Georgina una participación de
$234.83 en la casa número 39 de la calle de la Cruz de esta
ciudad, participación que compró el declarante por igual suma
que se obligó a pagar en cuatro años a vencer en 2 de febrero
de 1920, con interés del 1 por ciento mensual, habiendo hecho
además a su hija Georgina un anticipo de legítima de $500 a
entregar en la misma fecha 2 de febrero de 1920, devengando
mientras tanto el interés del 1 por ciento mensual, de modo
que por ambos conceptos le remitía todos los meses a New
York $7.34 que unidos a los $50 de la pensión alimenticia, ha-
cían un total de $57.34, suma insuficiente para atender a sus
más premiosas necesidades; y que lo menos que necesita
Georgina para vivir es la suma de $75.    En el otro *affidavit*
afirma Puigdollers que de la suma de $1,665.88 que sobraron
a Georgina de la cantidad que recibió por su parte en la li-
quidación de la sociedad de gananciales invirtió en pequeñas
deudas la cantidad de $165.88 y habiendo sido colocados a
interés los $1,500 restantes, fueron éstos pagados en 13 de
enero de 1915 a cuya fecha Georgina adeudaba al declarante
por anticipos de $15 a $20 mensuales unos $600 que le fueron
satisfechos quedando sólo $900 que a partir de enero 15, 1915,
ha ido gastando para cubrir sus necesidades por insuficien-
cia de la pensión, hasta el punto de que ya nada le queda hace
bastante tiempo, contando hoy exclusivamente para todos sus
gastos con los $50 de la pensión alimenticia y los $7.34 que
le envía el declarante.

Sobre el estado económico de Antonio Monroig declara Puigdollers que por conocimiento propio le consta que durante los últimos años y especialmente desde que empezó la guerra europea actual, los precios del azúcar han subido extraordinariamente, aumentando sus ingresos las factorías azucareras, y que por información que cree cierta sabe que la "Central Juanita" de Bayamón de que es Antonio Monroig uno de los principales partícipes, ha hecho extraordinarias ganancias con las ventas de azúcar, habiendo mejorado mucho su posición pecuniaria.

Por el examen comparativo de la evidencia suministrada llegamos sin gran esfuerzo a la conclusión de que Georgina Puigdollers cuenta hoy con menos recursos que antes para cubrir sus necesidades, pues debido al déficit permanente entre la pensión de $50 que le estaba señalada y sus gastos necesarios, ha tenido que consumir el resto de la cantidad que después de cubiertas algunas deudas le quedó de sus gananciales en la sociedad legal Monroig-Puigdollers, y que de la mezquina herencia de su madre, ascendente a $234.83, añadiendo $500 que su padre generosamente le ha anticipado en concepto de legítima con objeto de ayudarla sólo obtiene en definitiva $7.34 que con la pensión de $50 son claramente insuficientes para el sustento, habitación, vestido y asistencia médica de la misma, según la posición social que ocupa, y teniendo en cuenta el mayor costo actual de la vida no sólo en los Estados Unidos donde vive, sino también en esta Isla de Puerto Rico.

La cuantía de los alimentos, según el artículo 216 del Código Civil aplicable al presente caso según el artículo 221, será proporcionada a los recursos del que los da y a las necesidades del que los recibe y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo. La suma de $50 señalada para alimentos a Geor-

gina Puigdollers no guarda proporción con los recursos de Antonio Monroig y las necesidades de la que fué su esposa, y por tanto lejos de reducirse o dejarse sin efecto dicha pensión debe aumentarse hasta cubrir la suma de $75 según se pretende por la representación de la parte apelante. Esa cantidad no excede seguramente de la tercera parte de la renta de los bienes de Monroig.

No importa que Antonio Puigdollers disfrute o no de una posición económica desahogada, pues no es él sino Antonio Monroig el obligado a cumplir con el precepto del artículo 177 del Código Civil que dejamos transcrito, por más que sea plausible el proceder de todo padre que en un caso como el presente contribuya generosamente al bienestar de una hija, pero el proceder generoso del padre no exime al que fué esposo y dió causa al divorcio, de cumplir con el deber que la ley le impone.

Por las razones expuestas es de revocarse la sentencia apelada y dictarse otra declarando sin lugar la moción de Antonio Monroig y ordenando que la pensión de $50 sea aumentada hasta cubrir la suma de $75 mensuales en concepto de pensión alimenticia, que desde esta fecha Monroig pagará a Georgina Puigdollers hasta que otra cosa se disponga, con las costas de primera instancia a su cargo.

> *Revocada la sentencia apelada, y ordenando que Antonio Monroig entregue mensualmente a Georgina Puigdollers la suma de $75, en concepto de pensión alimenticia, con las costas.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.