TEXTO COMPLETO DE LA SENTENCIA
La apelante Adoración Jaime Jaime, mediante el presente recurso, interesa la revocación de una *649 resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao que declaró no ha lugar su solicitud de alimentos entre ex-cónyuges por razón de contar con descendientes y colaterales con capacidad para proveerle alimentos. Revocamos.
I
El apelado Israel Morales Vargas y la apelante Adoración Jaime Jaime, contrajeron matrimonio en 1974 en Yabucoa, Puerto Rico. Estuvieron casados durante veintisiete (27) años y procrearon seis (6) hijos, que al presente todos son mayores de edad. En 2001, obtuvieron sentencia de divorcio.
En octubre de 2001, la apelante presentó una petición de alimentos ascendente a cuatrocientos ($400.00) dólares al amparo del artículo 109 del Código Civil. En ella alegó carecer de suficientes medios para vivir, pues nunca ejerció ningún trabajo por el cual percibiera un salario.
Durante su matrimonio se dedicó a cuidar de los seis hijos y a ser ama de casa.
Oportunamente, el apelado presentó su oposición a la solicitud de alimentos formulada por su ex-esposa. También presentó una moción de desestimación aduciendo que los llamados a la obligación de alimentar a su ex-cónyuge son sus parientes más próximos, es decir, que se tienen que reclamar en primer lugar a sus descendientes, en segundo lugar a sus ascendientes y en tercer lugar a sus parientes colaterales. De no poder éstos, entonces será de aplicación la obligación del ex-cónyuge contemplada en el Artículo 109 del Código Civil.
Trabada la controversia, y luego de la celebración de la correspondiente vista, el Tribunal recurrido declaró no ha lugar la solicitud de la apelante. Basó su razón de decidir en que la apelante cuenta con descendientes y colaterales capacitados para ayudarle, dos de los hijos y la familia de uno de ellos disfrutan y se benefician de la posesión de los bienes muebles e inmueble que retiene la apelante, sin pagar canon o merced alguna por ello. Además, reconoció que el apelado asumió todas las deudas de la extinta sociedad legal de bienes gananciales sin que su ex-esposa asumiera alguna de ellas.
Insatisfecha con el dictamen en cuestión, la apelante Adoración Jaime Jaime recurre ante nos mediante el recurso que nos ocupa. Aunque intitulara el recurso como una Petición de Certiorari, la habremos de considerar como una apelación. Véase, Figueroa v. Del Rosario, 147 D.P.R. 121 (1998).
En el recurso, la parte apelante señaló la comisión de los siguientes errores por parte del Tribunal a quo, a saber:

“A. Erró el Honorable Tribunal de Primera Instancia al declarar no ha lugar la solicitud de alimentos ex-cónyuge, sin tomar en consideración que la peticionaria no cuenta con medios económicos para subsistir.

B. Erró el Honorable Tribunal de Primera Instancia al determinar que la peticionaria debió haber acudido a pedirle alimentos en primer lugar a los parientes más próximos. ”

La resolución en controversia se limitó a resolver que no era el ex-cónyuge quien en primera instancia tenía que proveer los alimentos solicitados; no resolvió que la apelante no tuviera necesidad de ellos. Siendo ello así, atenderemos únicamente el segundo señalamiento de error, el cual se cometió, y por ello revocamos la resolución revisada y devolvemos el caso al Tribunal de Primera Instancia.
De otra parte, del expediente ante nuestra consideración surge que no están en controversia las determinaciones de hechos contenidas en la resolución:

“1. La peticionaria [apelante] nunca ha ejercido otra labor que la de madre, esposa y ama de casa. Cursó 
*650
hasta noveno grado de escuela intermedia. Cuenta con la edad de cincuenta y un (51) años. Durante el matrimonio, la única fuente de ingresos provino de Don Israel Morales Vargas. El demandado [apelado] hace cinco (5) años comenzó a trabajar en la Corporación del Fondo del Seguro del Estado en el área de archivo.

2. La peticionaria [apelante] declaró que actualmente solamente cuenta con $180.00 mensuales que recibe por concepto del Programa de Asistencia Nutricional para ella y su hija. Sus gastos mensuales son comestibles $240.00, ropa $50.00, efectos personales $15.00, agua $15.00, energía eléctrica $80.00, transportación pública $15.00. Continúa haciendo uso del Plan Médico de su esposo hasta abril de 2002, fecha en que cesará dicho beneficio. Tiene gasto mensual en medicina de aproximadamente $20.00 a $25.00. En cuanto a los demás gastos, se sometió la Planilla de Información Económica en evidencia. Conforme a la misma, la peticionaria tiene un gasto mensual de $597.33.

3. También declaró que reside en el hogar ganancial y está en posesión del disfrute de los bienes y efectos propios del hogar. Actualmente viven en su hogar dos de sus hijos, ambos son mayores de edad. Uno de ellos está casado y vive con su esposa y una hija, también en el hogar de la peticionaria. La demandada [sic] no trabaja, se ocupa de las tareas propias del hogar y ha cuidado de la nieta mientras su hijo y la esposa de éste trabajan.

4. Los servicios de la vivienda están a nombre del demandado, excepto el teléfono que está a nombre del hijo que vive en el hogar quien lo paga porque es suyo. Durante el matrimonio hubo deudas gananciales, pero el demandado no le dejó deudas, ya que él las asumió.

5. El demandado trabaja en el Fondo del Seguro del Estado en Caguas y tiene un ingreso de $2,000.00 mensuales. Recibe un Bono de Navidad de $1,500.00. No tiene ningún otro tipo de trabajo. Reside con sus padres, quienes cuentan con la edad de 84 y 82 años respectivamente, en la residencia de éstos. El paga todas las deudas gananciales que ascienden a $480.00 mensuales, además de una deuda de teléfono perteneciente a su hijo y que él tuvo que asumir. Dicha deuda era de $1,278.00 y paga $125.00 mensuales. Estudia los sábados un curso de reparación de computadoras. Alegó padecer de desbalance y tiene un gasto mensual de medicamentos de $25.00 los cuales no cubre el plan. Tiene un préstamo de estudiante que paga $120.00 mensuales. Tiene un gasto de luz de $100.00 mensuales. ”

Contando con el beneficio de la comparecencia de ambas partes, procedemos a atender el recurso ante nuestra consideración.
II
Los alimentos entre ex-cónyuges tienen su fundamento en el deber jurídico que establece el Art. 109 del Código Civil de Puerto Rico, 31 L.P.R.A., §385, de prestarse éstos mutuo socorro, cuando no cuenten con medios suficientes para vivir. Soto v. Colón, 143 D.P.R. 282 (1997).
El Art. 109 dispone que:

“Si decretado el divorcio por cualesquiera de las causales que establece la see. 321 de este título, cualesquiera de los ex-cónyuges no cuenta con suficientes medios para vivir, el Tribunal de Primera Instancia podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge.

El tribunal concederá los alimentos a que se refiere el párrafo anterior, teniendo en cuenta, entre otras, las siguientes circunstancias:

(a) Los acuerdos a que hubiesen llegado los ex-cónyuges.

*651
(b) La edad, y el estado de salud.

(c)La cualificación profesional y las probabilidades de acceso a un empleo.

(d) La dedicación pasada y futura a la familia.

(e) La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.

(f) La duración del matrimonio y de la convivencia conyugal.

(g) El caudal y medios económicos y las necesidades de uno y otro cónyuge.

(h) Cualquier otro factor que considere apropiado dentro de las circunstancias del caso.

Fijada la pensión alimenticia, el juez podrá modificarla por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro ex-cónyuge. La pensión será revocada mediante resolución judicial si llegase a hacerse innecesaria, o por contraer el cónyuge divorciado acreedor a la pensión nuevo matrimonio o viviese en público concubinato. ”

Es un principio medular de nuestra jurisdicción que la institución de alimentos tiene un carácter dinámico y está revestida del mayor interés público. González v. Suárez Milán, 131 D.P.R. 296 (1992). En igual medida, los dictámenes sobre pensiones alimentarias siempre están sujetos a modificaciones, según varíe sustancialmente de un lado la capacidad del alimentante para proveer alimentos o del otro la necesidad del alimentista. Cantellops v. Cautiño Bird, 146 D.P.R. 791 (1998); Negrón Rivera y Bonilla, Ex-Parte, 120 D.P.R. 61 (1987); Valencia Ex—Parte, 116 D.P.R. 909 (1986).
El Tribunal Supremo ha reiterado la norma de que la mujer divorciada no tiene un derecho per se a ser alimentada por su ex-esposo. La concesión de alimentos dependerá de la sana discreción del tribunal. Toppel v. Toppel, 114 D.P.R. 16 (1983). Por su naturaleza provisional o transitoria, los mismos sólo deben subsistir mientras subsiste la situación que lleva a la corte a concederlos. Meléndez v. Tribunal Superior, 77 D.P.R. 535 (1954).
La norma establecía que para poder reclamar alimentos, la mujer tenía que surgir como cónyuge inocente en el pleito de divorcio, demostrar que no contaba con medios suficientes para vivir y establecer la capacidad económica del ex-marido. En el caso de Milán Rodríguez v. Muñoz, 110 D.P.R. 610 (1981), y posteriormente, mediante enmienda al Artículo 109, supra, a través de la Ley Núm. 25 del 16 de febrero de 1995, se extendió el beneficio de recibir alimentos tanto a la mujer como al hombre luego del divorcio. Por otra parte, el criterio de cónyuge inocente ha ido desapareciendo.
En atención a los criterios dispuestos en el Artículo 109, supra, podemos observar que se adopta una fórmula general de proporcionalidad. A tales efectos, se fijarán los alimentos del ex-cónyuge considerando los bienes de fortuna que tenga disponibles el ex-cónyuge alimentante, y las necesidades del ex-cónyuge reclamante. S. Torres Peralta, La Ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico, República Dominicana, Publicaciones STP, Inc., 1997, pág. 3.38. En el ejercicio de la discreción judicial, se considerarán los criterios enumerados en el Artículo 109 para la determinación de la pensión alimentaria. Id.
El Tribunal Supremo ha señalado que los criterios esbozados en el estatuto permiten al juzgador evaluar la condición del ex-cónyuge desde una perspectiva más humana y justiciera. Véase, Rodríguez v. Carrera, 139 D.P.R. 973 (1996). Dicho criterios van dirigidos a que, a modo de elementos de pmeba, nutran la conciencia del *652 juzgador al fijar el monto de la pensión. Díaz v. Alcalá, 140 D.P.R. 959 (1996). Véase además, voto particular de la Hon. Miriam Naveira de Rodón, Rebollo López v. Gil Bonar,_D.P.R._(1999), 99 J.T.S. 104, (1999), opinión de 25 de junio de 1999.
En Suria v. Fernández, 101 D.P.R. 316 (1973), el Tribunal Supremo señaló que la fijación de la pensión alimentaria bajo el Artículo 109, requiere que se exija prueba con audiencia de ambas partes. De la misma manera, en Casiano v. Tribunal Superior, 101 D.P.R. 327, 328 (1973), se resolvió que para fijar la pensión "es indispensable oír al ex-marido que ha de pagar los alimentos, o por lo menos darle la oportunidad de ser oído sobre ese extremo"-, por lo tanto, resulta igualmente imprescindible que para revocar la pensión ya concedida y en pleno disfrute, se conceda a la ex-cónyuge mujer la oportunidad de ser oída. No debemos olvidar que el asunto de alimentos entre parientes, incluyendo entre ex-cónyuges, está investido del mayor interés público. González v. Suárez, 131 D.P.R. 296, 301 (1992). Se trata de una obligación que surge del derecho de todo ser humano a desarrollar plenamente su personalidad. Id. El Artículo 109 debe ser interpretado con liberalidad. González v. Tribunal Superior, 126 D.P.R. 296 (1992); Cantellops v. Cautiño Bird, 146 D.P.R. 791 (1998).
En materia alimentaria entre ex-cónyuges, el Artículo 109 establece el principio rector. Sin embargo, no podemos analizar dicho articulado en el vacío, existiendo otras disposiciones relativas al asunto que nos ocupa.
Así, el Tribunal Supremo ha expresado que existe una gran diferencia entre el derecho de alimentos entre cónyuges y el derecho a alimentos entre ex-cónyuges. En el primer caso, que se rige por los artículos 142, 143 y 146 del Código Civil, 31 L.P.R.A. §561, 562 y 565, respectivamente, se establece la obligación de un cónyuge de proveer alimentos al otro, señalándose como criterios de lo que constituye alimentos “lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia.” Artículo 142, supra. Esta obligación cesa, una vez se decreta el divorcio. Luego del divorcio, la obligación de alimentar al ex-cónyuge está regulada por el Artículo 109 del Código Civil de Puerto Rico, supra. Toppel v. Toppel, supra.
Cabe reiterar que el inciso (h) del citado Artículo 109, supra, establece que el tribunal tomará en consideración cualquier otro factor que considere apropiado dentro de las circunstancias del caso.
Antes de considerar dicho inciso, preciso es evaluar lo establecido en el Artículo 143 del Código Civil de Puerto Rico, supra, que dispone sobre aquellos obligados a suministrarse alimentos. Dicho artículo señala, en lo pertinente, lo siguiente:

“Están obligados recíprocamente a darse alimentos, en toda la extensión que señala la see. 561 de este título:

(1) Los cónyuges.

(2) Los ascendientes y descendientes.

(3) El adoptante y el adoptado y sus descendientes.

[[Image here]]
Por su parte, el Artículo 144 del mismo cuerpo legal establece un orden para reclamar los alimentos, a saber:

“La reclamación de alimentos, cuando proceda y sean dos o más los obligados a prestarlos, se hará por el orden siguiente:

(1) Al cónyuge.

*653
(2) A los descendientes.

(3) A los ascendientes también del grado más próximo.

(4) A los hermanos.

Entre los descendientes y los ascendientes se regulará la gradación por el orden en que sean llamados a la sucesión legítima de la persona que tenga derecho a los alimentos. ”

El Código Civil no relaciona o armoniza el Artículo 109 con el orden establecido en los artículos 143 y 144 de dicho Código, aunque resulta obvio que dichos artículos atienden un mismo propósito de ley “en materia de prestación de alimentos bajo la premisa, incuestionablemente válida, de que sobre los fondos y el erario público no debe exclusivamente recaer la obligación de proveer para la subsistencia de los menesterosos.” Milán Rodríguez v. Muñoz, supra.
Resulta patentemente claro que los Artículos 143 y 144 presuponen la existencia de un matrimonio vigente. Mientras que la aplicación del Artículo 109 se retiene para aquellos casos donde se haya disuelto el vínculo matrimonial por virtud de un divorcio.
En el caso que nos ocupa, estamos ante la figura del ex-cónyuge, aludida en el Artículo 109, supra. Esta figura no sustituye a la del cónyuge en los Artículos 143 y 144, supra. No obstante, el tribunal no está impedido de evaluar la posibilidad de imponer alimentos a parientes del ex-cónyuge reclamante, según dispuesto por el ordenamiento. Ello, ante la gama de elementos que el inciso (h) del Artículo 109, autoriza al tribunal a tomar en consideración. En virtud de dicho inciso, el tribunal podrá tomar en cuenta todo aquello que facilite el proceso evaluativo a los fines de determinar la procedencia de una pensión alimentaria a favor del reclamante.
En el Estado de Louisiana, de donde proviene la redacción de nuestro Artículo 109, supra, lo relativo a alimentos entre ex-cónyuges se rige por lo dispuesto en los artículos 111 y 112 del Código Civil de dicho estado. La. C.C. art. Ill and 112.
En el referido artículo 112 se establece que el tribunal deberá tomar en consideración todos aquellos factores que resulten pertinentes para fijar el monto de la pensión alimentaria a favor del ex-cónyuge reclamante. Se indica, además, que en dicha evaluación se podrán incluir los nueve (9) factores enumerados en el artículo. 
En Jones v. Jones, 35,502 (La. App. 2 Cir. 12/5/01), 804 So. 2d 161, la Corte de Apelaciones de Louisiana analizó los argumentos esgrimidos por un ex-cónyuge a los efectos de que la pensión alimentaria impuesta por una corte inferior era insostenible a la luz de lo dispuesto en el Artículo 112, supra.
Se trataba allí de un matrimonio disuelto por divorcio. La señora Jones solicitó la fijación de una pensión alimentaria. Al momento de celebrarse la vista para determinar la procedencia y el monto de la pensión, la señora Jones contaba con la ayuda de sus parientes.
Al evaluar el monto de la pensión fijada por la Corte de Distrito, la Corte de Apelaciones tomó en consideración los factores enumerados en el Artículo 112. No obstante, el análisis de la necesidad económica de la señora Jones, no incluyó la ayuda que ésta recibía de sus familiares.
Aun estableciendo que el ex-cónyuge reclamante puede acudir a sus parientes para alimentos, entendemos que en primera instancia éstos deben ser reclamados al ex-cónyuge, a tenor con el Artículo 109, supra. De éste no poder cumplir con dicha obligación y en atención a las circunstancias particulares del caso, el tribunal deberá evaluar si procede establecer la obligación de alimentar a los parientes, de conformidad a los Artículos 143 *654 y 144.
En virtud de lo precedentemente expuesto, resolvemos que procede imponerle la obligación de una pensión alimentaria a Israel Morales Vargas. Ello sin perder de vista que éste tiene unos créditos contra la extinta sociedad legal de gananciales, a su haber, los cuales deberán tomarse en consideración cuando se realice el cómputo mensual de la pensión.
En virtud de la determinación de necesidad económica de Adoración Jaime Jaime, el tribunal deberá evaluar la cantidad a ser impuesta al recurrente por concepto de pensión alimentaria. Para ello, tomará en cuenta que la apelante continúa en la posesión y disfrute del inmueble en el cual residieron durante su matrimonio. Cabe señalar que, en su alegato, el señor Morales Vargas indicó que la propiedad en cuestión es privativa aun cuando ello no se hizo constar en la resolución dictada por el tribunal apelado. A su vez, la apelante ostenta la posesión de todos los bienes muebles adquiridos durante su matrimonio, incluyendo un automóvil.
Por otro lado, el tribunal deberá evaluar que la señora Jaime Jaime reside en dicha propiedad junto a dos de sus hijos mayores de edad, quienes al momento están empleados. Uno de sus hijos vive allí junto a su esposa e hija menor de edad. Mientras ambos hijos trabajan, la reclamante cuida de su nieta de dos años. Tanto la reclamante como sus hijos y nuera disfrutan del inmueble sin pagar canon alguno por ello. De otra manera, al calcular la pensión alimentaria a ser impuesta, se descontará de los gastos esgrimidos por la señora Jaime Jaime, todo aquel consumo de luz, agua y alimentos que se le pueda imputar directamente a otras personas que residen en la propiedad. Ello tomando en cuenta que la pensión alimentaria solicitada se evaluará en base a la necesidad económica de la apelante y no de los familiares que allí residen. El apelado no tiene porqué sufragar indirectamente gastos de vivienda, luz y otros, de éstos.
Por último, surge del expediente que Israel Morales Vargas asumió todas las deudas gananciales, cuyos pagos ascienden a $480.00 mensuales aproximadamente. En virtud de ello, tiene un crédito contra la sociedad legal de gananciales, lo cual se aplicará al fijar el monto de la pensión alimentaria a favor de Adoración Jaime Jaime.
En virtud de lo precedentemente expuesto, revocamos la sentencia apelada y devolvemos el caso al Tribunal de Primera Instancia para que continúen los procedimientos de conformidad a lo dispuesto en esta sentencia.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Leda. Aida I. Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 9
1. Consideramos el recurso como apelación, aunque conserve la misma identificación alfanumérica. Véase Figueroa v. Del Rosario, 147 D.P.R. 121 (1998).
2. Los factores enumerados en el Artículo 112 del Código Civil de Louisiana, supra, son los siguientes:
[[Image here]]

A. The court must consider all relevant factors in determining the entitlement, amount, and duration of final support. Those factors may include:

(1) The needs of the parties.

(2) The income and means of the parties, including the liquidity of such means.

*655
(3) The financial obligations of the parties.

(4) The earning capacity of the parties.

(5) The effect of custody of children upon a party’s earining capacity.

(6) The time necessary for the claimant to acquire appopiate education, training, or employment.

(7) The health and age of the parties.

(8) The duration of the marriage.

(9) The tax consequences to either or both parties.

[[Image here]]
3. Considerado éste bajo el orden establecido en el Artículo 144, estaría en igual posición que los descendientes.